**Victor M. ALMONTE, Plaintiff,**

v.

**The COCA–COLA BOTTLING COMPANY OF NEW YORK, INC.; Robert Marquis; and Leonard Marley, Defendants.**

**Civil No. 3:95CV1458(PCD).**

United States District Court,
D. Connecticut.

March 13, 1997.

---

Burton S. Rosenberg, Town Attorney's Office, Hamden, CT, for Plaintiff and Movants, International Brotherhood of Teamsters, Local Union No. 1035 and Chauffeurs Warehousemen & Helpers of America.

Jon S. Berk, Peter C. Schwartz, Gordon, Muir & Foley, Hartford, CT, Henry A. Platt, Ira Michael Shepard, Schmeltzer, Aptaker & Shepard, Washington, DC, for Defendants, Coca–Cola Bottling Co. of New York, Inc., Robert Marquis, Leonard Marley, and Robert Scully.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Plaintiff Victor M. Almonte sued defendants, the Coca–Cola Bottling Company of New York ("Coca–Cola"), Robert Marquis ("Marquis"), and Leonard Marley ("Marley"),

after Coca–Cola terminated plaintiffs employment. Plaintiffs amended complaint alleges violations of 42 U.S.C. § 1981, state common law claims for negligent and intentional infliction of emotional distress, false arrest and false imprisonment, and a state statutory claim under Connecticut General Statute § 31–51q.

## I. BACKGROUND

Plaintiff was employed as a General Laborer by Coca–Cola at its East Hartford plant during 1987, 1988, and from 1991 through October 1994. Plaintiffs employment during the relevant time period was governed by a collective bargaining agreement ("CBA") between Coca–Cola and Local Union No. 1035 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union"). The CBA specifies that the right "to control, determine and change ... working assignments" rests exclusively with Coca–Cola.

On October 25, 1994, Marquis handed out written work assignments for employees on plaintiffs shift. According to plaintiff, Marquis refused to allow plaintiff, who is black, to select his preferred working assignment, but allowed a white employee to choose his assignment. When plaintiff protested, Marquis ordered him to perform his assignment or leave the premises. Plaintiff contends that when he requested access to a union steward, Marquis ordered him to leave the premises. Plaintiff did not leave, but began his work assignment. Marquis and defendant Marley, a Distribution Supervisor, informed plaintiff that they had called the police and warned him to leave the plant. The police eventually arrived and arrested plaintiff on a charge of criminal trespass.

Defendants subsequently terminated plaintiffs employment. Plaintiff protested his termination in arbitration where he presented evidence of defendants' racially discriminatory conduct, including, inter alia (1) preferential treatment of white employees in the distribution of work assignments, and (2) statements by Marquis and Marley indicat-

ing their intention to terminate black employees "one by one." On March 25, 1995, an arbitrator found that defendants had engaged in racial harassment and discrimination and reinstated plaintiff with full back pay and benefits.

On August 18, 1995, after plaintiff resumed his employment, he was involved in a physical altercation with another employee, Thomas Fiasconaro. Defendants conducted an investigation, taking statements from witnesses, plaintiff and Fiasconaro. On August 21, 1995, plaintiff and Fiasconaro were suspended indefinitely for fighting, pending further investigation. On September 11, 1995, after defendants concluded their investigation, they terminated Fiasconaro and plaintiff for fighting, dishonesty, and falsification of Company records.[1]

Plaintiff subsequently filed this suit, alleging racial discrimination in violation of 42 U.S.C. § 1981 and common law claims for intentional and negligent infliction of emotional distress, false arrest and false imprisonment. Defendants move for summary judgment as to all counts on the grounds that (1) plaintiff may not recover under § 1981 for his October 1994 termination because he was ultimately reinstated with full back pay and benefits and therefore suffered no adverse employment action; (2) plaintiffs remaining claims under § 1981 are precluded by a mandatory arbitration clause in the CBA; (3) plaintiffs state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; (4) plaintiff cannot establish the elements necessary to a claim of intentional infliction of emotional distress, false imprisonment or false arrest; and (5) plaintiff has failed to state a claim under Connecticut general Statute § 31–51q.

## II. DISCUSSION

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and ad-

---

**1.** The latter charges were based on the employees' alleged falsification of their written state-

ments describing the fight.

missions on file, together with affidavits, if any, show that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A] scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The evidence must be viewed in the light most favorable to the non-moving party and all inferences must be drawn in favor of that party. See *Sports Auth. Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996).

**B. Plaintiff's October 1994 Termination**

■ Defendants argue that plaintiffs section 1981 claim based on his termination in 1994 must be dismissed, as plaintiff was reinstated and awarded full back pay and seniority. Plaintiff contends that his 1994 termination was part of a continuing course of discriminatory conduct for which he is entitled to recover under section 1981.

To prove a prima facie case of discriminatory treatment under § 1981, plaintiff must show that (1) he is a member of a protected class; (2) he was qualified to hold the position from which he was terminated and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see e.g., Chertkova v. Connecticut General Life Ins.,* 92 F.3d 81, 87, 91 (2d Cir.1996). Defendants' argument focuses on the third element.

Plaintiff was, in fact, terminated on October 25, 1994. However, defendants argue that he has not suffered any "adverse employment action" for purposes of § 1981 because he was reinstated and awarded full back pay and benefits after he prevailed in arbitration. Defendants argue that a plaintiff may not challenge an adverse employment decision that is subsequently remedied by the employer through a grievance process. See e.g., *Howze v. Virginia Polytechnic Institute and State University,* 901 F.Supp. 1091 (W.D.Va.1995) (*University's* initial decision to deny tenure not actionable where employee was ultimately granted tenure and pay increase); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 534 (N.D.N.Y.1995) (Finding no adverse employment action where plaintiff was terminated but continued to receive full salary and benefits because plaintiff "did not lose any pay or other tangible benefits"); *Raley v. Board of St. Mary's County Com'rs,* 752 F.Supp. 1272, (D.Md.1990) (Finding no adverse employment action where unsatisfactory work evaluation was changed to satisfactory and reprimand was removed form employee's file).

In each of these cases, the rejection of a discrimination claim was based on a finding that the alleged discriminatory conduct was not a final employment decision, but an "interlocutory or mediate decision[ ]." *Raley,* 752 F.Supp. at 1278 (quoting *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981)). Ordinarily, termination would undoubtedly qualify as an "ultimate employment decision," but defendants argue that subsequent arbitration of plaintiffs discrimination claims rendered his termination a mediate action that was ultimately reversed by plaintiffs reinstatement. Plaintiff contends that "mediate action" cases are distinguishable because the employee-plaintiffs in those cases were each restored to their former positions while plaintiff "remains terminated today."

Plaintiff fails to distinguish between his October 1994 and his September 1995 terminations. He does not argue that he would have had a viable § 1981 claim for a discriminatory 1994 termination after he was reinstated but before his 1995 termination. Whether his October 1994 termination was an initial action that ultimately resulted in no legally cognizable adverse effect on plaintiffs employment or, having been reinstated with full back pay and benefits, no further remedy is available to plaintiff, the result is the same. Having prevailed in arbitration, plaintiff may not now seek to recover a second time for his

October 1994 termination. His present terminated status is the result of Coca–Cola's 1995 termination, not his 1994 termination.

This is not to say that defendants' motivation in the 1995 termination may not be proven by conduct reaching back to 1994. However, to the extent that plaintiff seeks recovery for the October 1994 termination itself, his claim is barred and summary judgment is therefore granted to defendants.

### C. Arbitration Clause in the Collective Bargaining Agreement

■ Defendants move to dismiss plaintiffs remaining § 1981 claims on the ground that the CBA governing plaintiff's employment requires that such claims be submitted to arbitration. Plaintiff argues that under *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and its progeny, the arbitration clause does not preclude his suit.

In *Gardner–Denver*, an employee's racial discrimination suit had been submitted to arbitration pursuant to a CBA. The employee filed a Title VII action after an arbitrator resolved his claim in favor of his employer. Because the arbitrator's authority was limited to interpretation of the contract, which did not specifically incorporate Title VII, a determination of the employee's contractual rights was held not to preclude adjudication of his statutory rights, even where "both were [allegedly] violated as a result of the same factual occurrence." *Gardner–Denver*, 415 U.S. at 50, 94 S.Ct. at 1020.

In *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), *Gardner–Denver* was applied to a claim under the Fair Labor Standards Act. In holding that the petitioners were not required to submit their federal claims to arbitration, despite the inclusion of a mandatory arbitration clause in the CBA governing their employment, the *Barrentine* Court emphasized that while the FLSA, like Title VII, is designed to protect individual workers and ensure that every worker receives a fair wage, the Labor Management Relations Act is designed to promote employees' interests collectively. Requiring arbitration of an employee's FLSA claims was held

to compromise those claims in two ways: (1) a union that negotiates a CBA or represents an employee in a CBA arbitration may not zealously pursue the employee's rights if vindication of that employee's rights would not benefit the union membership as a whole; and (2) arbitrators may be less competent to resolve the complex statutory questions and legal issues common to FLSA claims.

More recently, the Supreme Court has indicated that under some circumstances an employee may be bound by an agreement to arbitrate his federal claims. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), a CBA arbitration clause was held to preclude the employee from bringing an Age Discrimination in Employment Act ("ADEA") claim "unless [the employee could show that] Congress [intended] to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. *Gilmer* distinguished the *Gardner–Denver* line of cases on three grounds: (1) the issue in those cases was whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims, whereas the arbitration clause in *Gilmer* specifically included statutory claims; (2) because the arbitration in *Gardner–Denver*, et al., was conducted pursuant to a CBA, the employees in those cases were represented by unions, which are required to balance the interests of the individual against those of the union as a whole, while the arbitration clause at issue in *Gilmer* was part of an individual employment agreement; and (3) unlike *Gilmer*, the *Gardner–Denver* cases were not decided under the Federal Arbitration Act, which "reflects a liberal federal policy favoring arbitration agreements."

This case appears to fall somewhere between *Gardner–Denver* and *Gilmer*. The arbitration clause at issue is part of a CBA, and therefore implicates the concern raised in *Gardner–Denver* and *Barrentine* that the union's balancing of individual against collective interests may compromise plaintiffs individual statutory rights. Like *Gilmer*, the arbitration clause in this CBA expressly includes claims of discrimination in violation of federal

law.[2] In addition, Congress has expressly encouraged alternative methods of dispute resolution, including arbitration, in resolving § 1981 claims.[3]

As this court has previously reflected:

"[t]he concerns expressed in *Gardner–Denver* and *Barrentine* strongly suggest that a collective-bargaining agreement can *never* require employees to submit individual statutory claims to grievance procedures. It is possible, however, to adopt a more limited view of the Court's holdings in those cases. Under this view, the exclusion of individual statutory claims from the collective-bargaining process would take the form of a rebuttable presumption rather than an absolute requirement: that is, the courts would assume that individual statutory claims were excluded from grievance procedures *unless* the collective bargaining agreement expressly provided otherwise. This view has the virtue of providing substantial protection for individual employees while recognizing that there may be circumstances in which the concerns expressed in *Gardner–Denver* and *Barrentine* are irrelevant or inapplicable...."

*Claps v. Moliterno Stone Sales, Inc.* 819 F.Supp. 141, 147 n. 6 (D.Conn.1993). *Claps'* less stringent interpretation of *Gardner–Denver* and *Barrentine* is found to be a more reasonable accommodation of the conflict between vitiating individual statutory rights and enforcing the express terms of a fairly negotiated contract than a per se rule barring enforcement of CBA mandated arbitration of individual statutory claims. *Cf. Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330

(1996), ("Whether the dispute arises under a contract of employment growing out of securities registration application, a simple employment contract, or a collective bargaining agreement, an agreement has yet been made to arbitrate the dispute[;][s]o long as the agreement is voluntary, it is valid, and ... it should be enforced.").

Plaintiff does not dispute that the CBA expressly prohibits discrimination as defined by federal law and provides for arbitration of any violation. Thus plaintiffs claim under § 1981 is precluded by the CBA arbitration clause unless plaintiff can show that "Congress ... has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985)). As noted above, Congress has expressly encouraged arbitration of § 1981 claims. Plaintiff therefore cannot carry his burden under *Gilmer.* Accordingly, plaintiff is required to arbitrate his remaining § 1981 claims.

**D. Common Law Claims**

**1. Intentional Infliction of Emotional Distress**

Defendants move to dismiss plaintiffs claim for intentional infliction of emotional distress on the ground that defendant's conduct cannot, as a matter of law, be considered extreme or outrageous, and, alternatively, that plaintiff has failed to allege facts form which a reasonable jury could find that he suffered extreme emotional distress.

---

**2.** Article IV(A)(1) of the CBA provides that "[i]n respect to employment, compensation, job assignments, layoffs, promotions, and all other conditions of employment, neither the Employer, nor·the Union, will discriminate against any employee ... because of race, ... [or] color ... as defined under Connecticut State Law and Federal Laws, order[s] and regulations pertaining to equal employment opportunity."

Article IX provides that "any dispute over the interpretation o[r] application of the agreement ... shall be initially discussed between the employee and his supervisor, ... [then] submitted to the Plant or Branch Manager ... [and,] if no

settlement is reached ... the dispute may be submitted to Arbitration in accordance with this article."

**3.** "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts this title [enacting section 1981a of this title and section 601 of Title 2 ... ]." Pub.L. 102–166, § 118, 105 Stat. 1071, 1081.

■ To prevail in a claim for intentional infliction of emotional distress under Connecticut law, plaintiff must demonstrate (1) that the defendant intended to inflict emotional distress or knew or should have known that such distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337 (1986). Defendants argue that plaintiff cannot carry his burden as to the second and fourth elements.

■ "[E]xtreme and outrageous" conduct has been defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991). Whether a defendant's conduct is extreme and outrageous is ordinarily a question of fact, *see Bozzuto v. Holler,* 1996 WL 737516 (Conn.Super.Ct.1996); *Redding v. Liberty Bank,* 1996 WL 383379, *3 (Conn.Super.1996), but summary judgment may be appropriate where the plaintiff fails to allege specific facts which a reasonable jury could find constituted extreme and outrageous conduct, *see Kintner v. Nidec–Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987).

Defendants contend that their request that the police escort plaintiff from the Coca–Cola plant on October 25, 1994 merely constituted the exercise of their right to control their property. Their conduct cannot, as a matter of law, be considered extreme and outrageous. Plaintiffs claim is not limited, however, to the events of October 25. In his second claim for relief, he alleges specific discriminatory conduct of defendants, including (1) Marley's statement that "[t]hey don't make them any dumber than those two black guys," (2) Marquis' statement that he would fire blacks one by one, (3) this practice of handing assignments to white workers but throwing them at the feet of black employees. A reasonable juror could conclude that overt racial discrimination exceeds all bounds tolerated by a decent society. *Cf. Talit v. Peterson,* 1995 WL 584364, *5 (Conn.Su-

per.Ct.1995) (finding plaintiffs claim of retaliatory discharge sufficient to defeat defendant's motion for summary judgment).

Defendants contend that even if their conduct could be considered extreme and outrageous, plaintiff has failed to adduce sufficient evidence that he suffered severe emotional distress. Connecticut courts have held that emotional distress is severe where it reaches a level which "no reasonable person could be expected to endure." *See Mellaly v. Eastman Kodak,* 42 Conn.Supp. 17, 597 A.2d 846, 848 (1991). Plaintiff has alleged that he suffers from insomnia and depression, that he fears he will be unable to find another job because defendants will tell potential employers that he was fired, that he will be unable to provide for his family, and that he fears that defendants will cause him physical harm. Defendants argue that plaintiffs cannot establish that his distress is *severe* because he failed to seek counseling or medical treatment.

It is not clear whether a plaintiff must seek treatment to maintain a claim of severe emotional distress under Connecticut law. *See, e.g., Rosenberg v. Hebrew Home and Hosp.,* 1997 WL 35808, *2 (Conn.Super.Ct.1997). In *Rosenberg,* plaintiffs allegations of depression, lack of sleep, anxiety attacks, physical pain, raised blood pressure, rashes, and skin problems constituted a level of distress beyond what a reasonable person might be expected to endure. In denying defendants motion to dismiss, whether plaintiff had sought medical treatment was not discussed. In *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986), defendant's motion for summary judgment dismissing plaintiffs intentional infliction of emotional distress claim was granted, noting "[p]laintiff was neither treated nor did he seek medical assistance for the distress he allegedly suffered."

■ This issue need not be conclusively resolved. Assuming, arguendo, that evidence of medical treatment or counseling is not required in *every* case to prove severe emotional distress, such evidence would be required to defeat summary judgment on these facts. The symptoms described by plaintiff—sleeplessness, depression, anxiety—are

no doubt common among employees who have been fired, regardless of the circumstances. Absent some evidence that plaintiff suffered these symptoms to an extraordinary degree, *see, e.g., Rosenberg,* 1997 WL 35808 at *2 (describing physical manifestations of plaintiffs emotional distress), the facts alleged in his pleadings and opposition papers, taken in the light most favorable to plaintiff, do not support his claim of severe emotional distress. Accordingly, defendants' motion for summary judgment dismissing plaintiffs claims of intentional infliction of emotional distress is granted.

### 2. False Imprisonment/False Arrest

■ Almonte claims false imprisonment and false arrest based upon the October 1994 incident. Defendants contend that Almonte's refusal to leave the property constituted criminal trespass, and that they were therefore legally entitled to seek the aid of the police in removing him from the building.

■ Under Connecticut General Statute § 53a–107(a), a person is guilty of criminal trespass when "knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter [is] personally communicated to him by the owner ... or other authorized person." It is undisputed that Almonte was either asked or ordered to leave the premises by Marquis, who was unquestionably an "authorized person." Nor does Almonte contend that he was otherwise licensed or privileged to remain on the property. He does claim that defendants "falsely reported ... that the plaintiff was trespassing on the defendant Coca–Cola's property." In the face of his concession that he remained on the premises after Marquis ordered him to leave, his claim is an erroneous legal conclusion. His concession constitutes an admission he was a trespasser. Thus, the alleged report by defendants to the police was true. "[A] cause of action for false imprisonment cannot be sustained where the plaintiffs arrest results from the defendant's institution of and compliance with proper legal authority." *LoSacco v. Young,* 20 Conn.App. 6, 21, 564 A.2d 610 (1989). Accordingly, the facts alleged cannot

support a claim that plaintiff was falsely imprisoned or arrested by defendants. Defendants are therefore granted summary judgment as to plaintiffs Fourth Claim for Relief

### 3. Negligent Infliction of Emotional Distress

#### a. Pre-emption under § 301 of the LMRA

Defendants argue that the claim of negligent infliction of emotional distress and negligence are preempted by § 301 of the Labor–Management Relations Act, which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C § 185(a). Section 301 is interpreted to mean that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results ... ) is pre-empted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988).

Negligence is a violation of a duty. Plaintiff must prove that defendants owed him a duty of care. *See Jonelis v. Russo,* 863 F.Supp. 84, 88 (D.Conn.1994). Defendants argue that (1) plaintiff has failed to allege that defendants owed him a duty of care, and (2) because any such duty could only arise from the CBA, resolution of plaintiffs negligence claims will require interpretation of that agreement and is thus preempted under § 301 of the LMRA.

It does appear that plaintiff has failed to specify the nature and origin of any duty of care owed to him by defendants. The failure to set forth this essential element of a negligence claim is probably a sufficient reason to

grant defendants' motion for summary judgment. *District of Columbia v. White*, 442 A.2d 159, 162 (D.C.App.1982) ("To allege negligence, the complaint cannot merely make conclusory allegations but must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability.").

Defendants' preemption argument asserts the need to interpret the CBA to determine whether defendants breached a duty of care in terminating plaintiff and having him removed from Coca-Cola's premises in 1994. Plaintiff does not respond specifically to this argument, but contends that some of the other conduct on which his negligence and negligent infliction of emotional distress claims are based do not require interpretation of the CBA. Because defendants' motion to dismiss plaintiffs negligence claim addresses only the October 1994 termination and arrest and the September 1995 termination, and not any discriminatory conduct prior to the October 1994 termination, consideration of the motion will be limited to those claims arising from the two terminations.

■ Plaintiff's right to (1) remain on Coca-Cola's premises after being asked to leave, (2) be provided access to a union steward on request, and (3) retain his job after refusing to obey defendant's order to leave the premises, are dependent on an interpretation of the CBA, which necessarily limits Coca-Cola's right to control its premises and discipline employees. Similarly, whether defendants acted negligently or in an extreme and outrageous manner in their investigation of the September 1995 fight with Fiasconaro and their ultimate decision to terminate both Fiasconaro and plaintiff will depend on plaintiff's and defendants' rights and obligations with regard to discipline and termination of employees under the CBA. Accordingly, to the extent that plaintiffs negligence claims are based on the October 25, 1994, termination and arrest and the September 1995 investigation and arrest, those claims are preempted by § 301 of the LMRA.

4.   Connecticut General Statute § 31-51q.

■ Plaintiff alleges in Count Six that his termination was "an act of intentional racial discrimination ... in violation of the plaintiffs rights under ... 42 U.S.C. § 1981 and Connecticut General Statute § 31-51q." Defendants argue that § 31-51q protects employees from discharge or discipline based on the employee's exercise of certain federal and state constitutional rights, but not from discriminatory treatment based upon race. Section 31-51q provides:

> Any employer ... who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment of the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state, ... shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages....

Sections 3, 4, and 14 of Article I of Connecticut's state constitution mirror the first amendment to the federal constitution in that both protect religious liberty, freedom of speech, and the right to assemble and petition, respectively. As plaintiff does not allege that his termination violated his right to engage in the activities protected under section 31-51q, his claim under that statute must be dismissed as a matter of law.

Section 31-51q also provides that if a court determines that an action for damages was brought under the statute "without substantial justification," the court may, in its discretion, award attorney's fees and costs to the employer. Defendants argue that they are entitled to an award of fees and costs because Almonte fails even to allege the elements necessary to make out a claim under section 31-51q. As the failure is not clear, costs and attorney's fees will not be awarded to defendants.

### III.   CONCLUSION

Defendants' motion for summary judgment [doc. # 34] is granted.

**SO ORDERED.**