Daphne MCKINNEY, Plaintiff,

v.

**DEPARTMENT OF TRANSPORTATION, Defendant.**

CIVIL ACTION NUMBER: 3:13-CV-1735 (AWT)

United States District Court, D. Connecticut.

Signed March 7, 2016

W. Martyn Philpot, Jr., Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiff.

Colleen B. Valentine, Josephine S. Graff, Office of the Attorney General, Hartford, CT, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

Alvin W. Thompson, United States District Judge

Daphne McKinney ("McKinney") brings this action against the State of Connecticut Department of Transportation ("DOT"). Her complaint alleges discrimination and retaliation in violation of 42 U.S.C. § 2000e et seq. ("Title VII"). The defendant has moved for summary judgment. For the reasons set forth below, the defendant's motion for summary judgment is being granted.

### I. FACTUAL BACKGROUND

McKinney is a black woman who has been employed by DOT since approximately 1993. Since 2000, McKinney's position at DOT has been Transportation Planner 2. McKinney's primary responsibilities in this position are to conduct research and generate reports for her supervisor concerning a variety of transportation-related topics.

Prior to the instant case, McKinney brought three other lawsuits against DOT and/or DOT employees. In 2001, she filed a complaint against DOT in which she alleged discrimination in violation of Title VII; that case was settled. In 2004, McKin-

ney filed a complaint against her then-supervisor at DOT, alleging defamation and negligent and intentional infliction of emotional distress. In that case, the trial court entered summary judgment in favor of the defendant, and on appeal, the appellate court affirmed. In 2006, McKinney filed a complaint against DOT and individual DOT employees, alleging discrimination in violation of Title VII. That case arose out of DOT's termination of McKinney's employment in 2006 for workplace violence and misuse of state property, which was subsequently arbitrated and converted to a 35 day suspension. The 2006 case proceeded to a jury trial, and the jury returned a verdict in favor of the defendants.

In 2011, in the wake of widespread damage caused by Hurricane Irene, the Connecticut Department of Social Services ("DSS") administered the federal Disaster Supplemental Nutrition Assistance Program ("D-SNAP"). D-SNAP provided eligible households with a one-month allotment of food stamps. Eligibility for the program was determined based on the household's location within the disaster area; adverse effects on the applicant due to the storm, including damage to or destruction of the applicant's home, lost income, or disaster-related expenses; and income level, specifically, the applicant's total net income during the benefit period plus accessible liquid resources, which had to be under a D-SNAP income limit that varied depending on the size of the applicant's household.

After DSS received complaints about fraud allegedly committed by D-SNAP applicants, auditors conducted a review of the program and found widespread fraud involving applicants who had self-reported inaccurate information. DSS determined that 190 state employees who had applied for and received D-SNAP benefits were actually ineligible for those benefits. DSS contacted Linda Yelmini ("Yelmini"), the Assistant Manager of the Office of Labor Relations ("OLR") in November 2011. Yelmini reviewed each of the applications, and then she held a meeting with all of the affected state agencies. Each state agency then conducted its own investigation of individual employees who had been identified as having obtained benefits for which they were ineligible. Each agency then determined whether and how to discipline the identified employees. As a result of these investigations, approximately 80 individuals were dismissed from state employment.

In March 2012, DOT received notification that McKinney and three other DOT employees may have received D-SNAP benefits for which they were not eligible, and then DOT investigated the four identified employees. In its investigation of McKinney, DOT determined that she had seriously misrepresented material facts in her D-SNAP application. McKinney was given an opportunity to explain or refute the documentary evidence relied on by the investigator, but she chose not to respond to any of the investigator's questions. The misrepresentations included McKinney's failure to disclose that she was employed by DOT, understatement of her income, failure to disclose her bank account or retirement account balances, and her listing of four household members who did not exist. McKinney acknowledges that her application was "inaccurate" in these respects, but she alleges that she believed herself to be eligible for D-SNAP benefits based on the information she provided in her application and that the inaccuracies did not render her ineligible. In addition, McKinney stated on her application that she lost power for several days due to the storm, but she later admitted that her house experienced a power outage around the same time due to a faulty electrical box; an employee from Connecticut Light

and Power Company stated in an affidavit that there was no record of an electric power outage or interruption at McKinney's address.

Following the investigation, DOT issued a "Loudermill" notice to McKinney, informing her that DOT had scheduled a hearing to "investigate allegations regarding alleged fraudulent application for and receipt of" D-SNAP benefits. (Loudermill Notice, Def.'s Mot. for Summ. J., Exh. DM29, Doc. No. 51-24, at 1.) On May 1, 2012, McKinney and her union representative attended the hearing. After the hearing, DOT terminated McKinney's employment based on its finding that she had egregiously falsified her D-SNAP application. Moreover, given her education level, DOT believed that McKinney was aware of what she was doing and that her misrepresentations were purposeful. Vicki Arpin ("Arpin"), the Human Resources Administrator for DOT, made the final decision to terminate McKinney's employment. In a letter notifying McKinney of the termination, Arpin stated that McKinney's fraudulent application for and receipt of D-SNAP benefits violated Connecticut Personnel Regulations § 5–240–1a and constituted just cause for dismissal.[1]

Shortly after her termination, McKinney filed a grievance with her union contesting the dismissal. The grievance was denied, and her case proceeded to arbitration. The arbitration hearing was held on November 28, 2012, and the arbitrator heard testimony from a number of witnesses. On February 22, 2013, the arbitrator issued his decision, concluding that while DOT had just cause to discipline McKinney, it did not have just cause to terminate her employment.

The arbitrator found that:

In light of the nature of the information she included on the application and the information she omitted on the application, taken together with questions raised as to the [plaintiff's] testimony about the loss of power at her home, I am persuaded that, consistent with prior arbitration awards relating to the same type of conduct, a significant penalty short of termination is justified.

(Aribtration Award, Defs.' Mem., Exh. 20, Doc. No. 51-20, at 18.). The arbitrator found that McKinney's "reasons for including her job at Macy's years ago but not including her current job, not including her $70,000 savings, and listing incorrect names on the application simply do not ring true," and that "it is difficult to credit" McKinney's purported belief that she did not need to report her savings or the fact that she was currently employed at DOT. (Id. at 17-18.) The arbitrator ordered that McKinney's termination be converted to a suspension and that she not receive any back pay or benefits from the date of her termination until the date of the arbitration decision.

At Yelmini's request, the Office of the Attorney General sought to vacate the arbitration award on the grounds that it violated public policy, because Yelmini believed that out of the nearly 200 state employees whose D-SNAP applications she reviewed, McKinney's was "the worst case of fraud that [she] had seen." (Rule 56(a)1 Statement, Doc. No. 51-2, at ¶ 34.) McKinney's arbitration award was not the only one Yelmini wanted vacated; in total, Yel-

---

1. As a permanent employee of the State of Connecticut, McKinney's contract provided that she could only be demoted, suspended, or dismissed for just cause. "Just cause" is defined to include "[t]heft, willful neglect or misuse of any state funds" and "[e]ngaging in any activity which is detrimental to the best interests of the agency or of the state," both of which were cited in the termination letter. Conn. Personnel Regs. § 5–240–1a.

mini requested that the Attorney General's office seek to vacate between 10 and 20 of the D-SNAP arbitration awards. On October 13, 2013, the Connecticut Superior Court upheld McKinney's arbitration award.

McKinney was not reinstated to state employment until the Superior Court's decision. She returned to work on January 2, 2014. She received back pay and benefits for the period between the arbitration award and her reinstatement.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir.1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir.1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Race Discrimination

In Count One, McKinney alleges that she was discriminated against based on her race. She alleges that other state employees who improperly received D-SNAP benefits had their positions terminated but, unlike her, they were "promptly rein-

stated to their former positions," while DOT refused to permit McKinney to return to her position and "vindictively attempted to prevent and prolong her return" by appealing the arbitration decision that reinstated her position. (Compl., Count One at ¶¶ 11–12.) McKinney claims that "[b]ut for [her] race and color, she would not have been treated in the harass[ing], discriminatory and retaliatory manner" in which she alleges DOT treated her. (Id. at ¶ 17.)

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the allocation of burdens and order of presentation of proof in a Title VII case alleging discrimination. The Second Circuit has described the four-pronged test of McDonnell Douglas as follows: "First, the plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir.2000). "The burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the prima facie stage has been characterized as 'minimal' and 'de minimus.'" Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir.2005) (citations omitted).

The defendant concedes that McKinney can establish the first two elements of a prima facie case. It disputes the third and fourth elements: whether she suffered an adverse employment action and, if she did, whether such action occurred under circumstances giving rise to an inference of discrimination.

■■■ As to the third element, "[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and repri-

mand." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). Adverse employment actions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Raspardo v. Carlone, 770 F.3d 97, 126 (2d Cir.2014). An employment action may not be sufficiently adverse to support a cause of action if it is "not a final employment decision, but an interlocutory or mediate decision." Almonte v. Coca–Cola Bottling Co. of N.Y., 959 F.Supp. 569, 572 (D.Conn.1997) (internal citation and quotation marks omitted).

In Almonte, the court found that "[o]rdinarily, termination would undoubtedly qualify as an 'ultimate employment decision,'" but the "subsequent arbitration of plaintiff's discrimination claims rendered his termination a mediate action that was ultimately reversed by plaintiff's reinstatement." Id. "Having prevailed in arbitration, plaintiff may not now seek to recover a second time." Id. See also Rommage v. MTA Long Island R.R., No. 08–cv–836, 2010 WL 4038754 at *15 (E.D.N.Y. Sept. 30, 2010) ("[P]laintiff has failed to allege an adverse employment action because she was reinstated with back pay."); Krinsky v. Abrams, No. 01CV5052(SLT)(LB), 2007 WL 1541369, at *8 (E.D.N.Y. May 25, 2007) ("Mediate actions ... even if constituting an adverse employment action, may not lead to legally cognizable harm if by some subsequent action on the part of the employer, the employee is restored to his or her previous status."); Lumhoo v. Home Depot USA, 229 F.Supp.2d 121, 139 (E.D.N.Y.2002) (holding no adverse employment action under Title VII because plaintiff's termination was "a mediate action that was ultimately reversed by [plaintiff's] reinstatement").

■■■ McKinney's claim is that while other state employees who improperly received D–SNAP benefits and had their employment terminated were promptly

reinstated to their positions, DOT refused to permit her to return to work after the arbitrator's ruling in her favor. Instead, DOT appealed the arbitration award and only reinstated her after the Superior Court upheld that award. She was reinstated with back pay and benefits for the period between the arbitration award and her reinstatement, and her claim is not based on the period prior to the arbitration award. Consequently, McKinney's reinstatement with pay and benefits rendered her suspension without pay following the arbitration award a mediate action such that she cannot now demonstrate that she suffered an adverse employment action.

■ In addition, "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir.2006). In Joseph, the court found that placement on administrative leave with pay, during a criminal investigation of an employee, did not constitute an adverse employment action. "The terms and conditions of [the plaintiff's] employment did not include a right to expect that he would be allowed to continue his responsibilities while he was facing serious criminal charges." Id. Similarly, the ultimate discipline imposed upon McKinney of which she complains was suspension with pay during the period that Yelmini, the Assistant Manager of OLR, not DOT, was seeking to have the arbitration award vacated. Even McKinney acknowledged, during her deposition, that some disciplinary action against her was appropriate based on her conduct.

■ Even if McKinney could satisfy the requirements of the third element of the McDonnell Douglas test, she has failed to produce evidence that could show that the circumstances surrounding the termi-

nation of her employment give rise to an inference of discrimination. "A plaintiff may raise such an inference by showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir.2000). "To be similarly situated, the individuals with whom [the plaintiff] attempts to compare [herself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.1997) (internal citation and quotation marks omitted).

> What constitutes 'all material respects' ... must be judged based on (1) whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. ... Hence the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than showing that both cases are identical.

Graham, 230 F.3d at 40 (citations omitted).

■ As a general rule, whether employees are similarly situated is a question of fact for a jury, but the court "may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation ... where no reasonable jury could find that the persons to whom the plaintiff compares [herself] are similarly situated." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir.2006) (citing Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n. 2 (2d Cir.2001)).

In her opposition, McKinney compares herself to two different groups of purportedly similarly situated coworkers: (1) three other DOT employees who were disciplined for alleged misrepresentations in

their D-SNAP applications and received less severe discipline than her (Pl.'s Opp. To Def.'s Mot. for Summ. J., Doc. No. 56, at 22); and (2) other DOT employees who allegedly engaged in "far more egregious conduct" than she did, albeit unrelated to the D-SNAP investigation, and were never terminated for their misconduct. (Id. at 23.)

■■■■ As to the first group, McKinney acknowledges that all three are also African American. McKinney fails to provide evidence as to whether the nature of the misrepresentations by those DOT employees on their D-SNAP applications was similar to the flagrant and inexcusable nature of her misrepresentations, so she does not provide an evidentiary basis for a conclusion that they were in fact similarly situated to her. Nor does she provide any factual basis for her contention that the disciplinary treatment she received was disproportionately harsh because of her race, which she acknowledges is the same as that of these three purported comparators.

■■■■ As to the second group of DOT employees, McKinney also fails to provide evidence that the other employees engaged in conduct that bears a "reasonably close resemblance" to the conduct for which she was disciplined. See, e.g., Shumway, 118 F.3d at 64 (finding plaintiff did not prove she was similarly situated to coworkers where "plaintiff presented no evidence that the alleged conduct of the comparators was similar to her conduct"). McKinney presents no evidence about the incidents for which these alleged comparators were disciplined or that shows the discipline they received. Instead, she simply relies on her own deposition testimony, which is based solely on her subjective belief that these other employees were similarly situated to her and received less severe discipline. That testimony alone is insufficient to create a genuine issue of material fact

as to this point. See Martin v. Town of Westport, 558 F.Supp.2d 228, 241 (D.Conn. 2008) (holding plaintiff's affidavit as to coworkers' alleged similarities insufficient to defeat summary judgment). "Evidence offered to establish that purported comparators are similarly situated cannot be based on hearsay or 'common knowledge.'" Edwards v. Metro–N. Commuter R.R. Co., 463 F.Supp.2d 279, 284 n. 2 (D.Conn.2006) (quoting Shumway, 118 F.3d at 64–65).

Therefore, McKinney has failed to meet even her de minimus burden for establishing a prima facie case of disparate treatment under Title VII, and summary judgment is being granted to DOT on the discrimination claim.

**B. Retaliatory Discharge**

■■■■ In Count Two, McKinney claims that the termination of her employment was in retaliation for her prior litigation against DOT. "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir.2012).

With respect to the first element of the prima facie case, it is undisputed that McKinney had filed prior lawsuits against DOT claiming discrimination, an activity protected by Title VII. DOT was aware of these lawsuits, so the second element is also satisfied.

■■■■ As to the third element, a plaintiff claiming retaliation under Title VII need not allege an "adverse employment action," as in a race discrimination claim; rather, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from

making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" Hicks v. Baines, 593 F.3d 159, 165 (2d Cir.2010) (quoting White, 548 U.S. at 67, 126 S.Ct. 2405). As discussed above, the termination of McKinney's employment was reversed, and the discipline of which she complains was suspension with pay. However, a termination that is ultimately reversed is an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 57, 126 S.Ct. 2405. Therefore, McKinney has met her burden as to the third element.

However, McKinney cannot establish a prima facie case because she has not produced evidence that could establish the fourth element, which requires that she "present sufficient evidence ... that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir.2001). "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action" or by producing direct evidence. Lovejoy–Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir.2001) (internal citation and quotation marks omitted). McKinney has failed to produce either type of evidence.

First, McKinney has not produced evidence that could show that her protected activity was followed closely by a retaliatory act. She was discharged more than four years after she filed her most recent lawsuit against DOT and more than one year after that case was resolved in the defendant's favor. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Generally, courts have found that a time period of one year between the protected activity and the alleged retaliatory act is too attenuated to establish the requisite causal connection. See, e.g., Chang v. Safe Horizons, 254 Fed.Appx. 838, 839 (2d Cir.2007) ("[Plaintiff's] termination ... occurred almost one year after her complaint of discrimination, thus undermining any causal nexus based on temporal proximity"); Deravin v. Kerik, No. 00CV7487(KMW)(KNF), 2007 WL 1029895, at *11 (S.D.N.Y. Apr. 2, 2007) (collecting cases).

Second, as discussed above, McKinney fails to provide any evidence that she was treated differently from similarly situated employees because she engaged in protected activity.

In addition, McKinney fails to present any evidence that suggests that DOT acted with retaliatory animus. Rather, the only evidence is that OLR (not DOT) identified McKinney as one of four DOT employees who should be investigated, based on the determination by DSS (not DOT); that McKinney had made several misrepresentations on her application; that Yelmini, who was from OLR (not DOT) concluded that McKinney was the worst case of fraud out of roughly 200 state employees; and that Yelmini sought to vacate between 10 and 20 of the D-SNAP arbitration awards, one of which was McKinney's. Thus, to the extent McKinney's claim rests on the decision to appeal the arbitration award, which delayed her reinstatement, there is no evi-

dence of retaliatory animus on the part of DOT.

Therefore, McKinney has failed to meet her burden with respect to establishing the fourth element of a <u>prima</u> <u>facie</u> case, and summary judgment is being granted to DOT on the retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, defendant Department of Transportation's Motion for Summary Judgment (Doc. No. 51) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.